Good morning, ladies and gentlemen. Welcome to the Ninth Circuit. It's a lovely day out there and we hope that you'll enjoy the session today. We have three cases to submit before we hear oral argument. They are Valenzuela-Figueroa v. Garland, Tomas-Andre Pedro v. Garland, and Lozano v. Garland. The first case for argument today is Jones v. L.A. Central Plaza, and I believe Ms. Davis is representing the appellate, so please, Joan, proceed. Good morning. May it please the Court. Appellate George Jones' claim regarding Americans with Disabilities Act, ADA, violations was and is meritorious and properly pled from when the complaint was originally filed to the filing of the first amended complaint, through plaintiff's filing of a motion for summary judgment, and through the present. Mr. Jones is permanently disabled and must use a cane or a walker to navigate. On two separate occasions, in February of 2021 and April of 2021, Mr. Jones encountered multiple barriers at appellee's property, which denied him full and equal access of the services, privileges, and accommodations offered at the property. In the complaint, and in his operative first amended complaint, Mr. Jones identified with specificity various architectural barriers on the property in violation of the ADA, and the way in which those barriers relate to his significant mobility impairment. Let me just ask you this to be sure I understand. Did he personally, physically try to, if you will, enter the property, and did he personally encounter the barriers that he described in the complaint? Mr. Jones did personally encounter the barriers described in the original complaint. In addition, in the first amended complaint, there are multiple barriers that were shown to continue to exist at the filing of that time that he had encountered. He also alleged in the first amended complaint, as is proper under DORAN, that there were additional barriers that he had not encountered, but in fact are relevant to his particular mobility impairment. Because he said that he wanted to go in the future, but was dissuaded by these barriers. Is that correct? That is correct, Your Honor. Well, how does he have standing, for example, with respect to the absence of a sign that unauthorized vehicles would be towed? How does he have any injury that's fairly traceable to that sign, or the absence of that sign? The fact that there's the absence of a sign regarding the penalties for parking and designated disabled parking and the tow away that could occur due to that, that is a concern for Mr. Jones because that, without the posting of such signs, people without disabilities and without the proper placards or license plates are not sufficiently deterred from parking. But the sign is otherwise marked on the ground. That is correct. So everyone knows that it's a handicapped parking space. I just, I guess I'm having a hard time seeing how there's an injury that's fairly traceable to that specific omission. I mean, he can't just sue as a private attorney general. He has to sue as someone who has an injury that's fairly traceable to the specific conduct. And that particular conduct, given that the space is marked and he has no facts to show that, you know, if he had, for example, facts that people were parking there and I saw it or I was told by it and here's pictures somebody else took of people parking in it because of the absence of the sign. That might do it, but I don't see any facts that support an injury from that specific aspect. In the totality of circumstances, which would include the tow away sign, which would include the lack of proper markings of the access aisle, without proper markings in the totality of the circumstances, there are not sufficient deterrents for people to park without the proper, again, placards or license plates. And I think that that speaks largely also to the deterrent effect. Can I ask you this? Just arguendo. Let's say your client has standing. I'm sure you're very aware of the fact that the number of ADA complaints tied with state actions has just skyrocketed. I think at one point, like 20 percent of the cases in the central district, that's Garvey. In this case, it counted 81 complaints filed since, I think, July of 2020 by your client, four of which were heard by him. And basically they're all boilerplate. You have a situation here where the scheduling order called for amendments to be filed within a certain period of time. Four months had passed. The judge looked at these complaints that had been filed, the boilerplate overall, and basically said, you know, this is enough. We're not doing this. Why is that a violation? Why is this an abuse of the judge's discretion? The judge's analysis was incomplete. The judge did refer to particular language that was either the same or entirely similar in at least four of plaintiff's complaints, including this one. However, that language was part of the complaint. What was not quoted and was not analyzed was each violation that was alleged in either the past complaints and the operative complaint in this case. So in other words, from your perspective, even if your client had filed 10,000 complaints, as long as there was operative language that was different than the language here, it doesn't matter? Even if, for example, two of the complaints or all four of the complaints had some violations that were exactly the same and articulated exactly the same, that is of no consequence as long as plaintiff, in fact, encountered those violations and they were properly pled. As Judge Smith mentioned, a district court judge found that Mr. Jones had filed 81 separate lawsuits in a span of less than two years, which means that at least 81 times he's gone to different establishments, which is a bit shocking because I think most people are creatures of habit. You go to a particular supermarket, restaurant, et cetera, and go there over and over again. I mean, is it really plausible to say that Mr. Jones genuinely has an intent to return to the store? I mean, it seems implausible someone would go to 81 different establishments at the very least. In this case in particular, Mr. Jones went on two different occasions, February of 2021 and April of 2021. In his declaration that was submitted in support of his motion for summary judgment, he explained that the reason that this is a property that he went to twice in the past and would legitimately like to return to in the future if it is in fact safe for him is that it's close, it's located very close to a friend of his whom he visits multiple times a month and it's a place that he enjoys purchasing particular items at, namely bags of ice, soda, and chips to bring over when he enjoys time with his friend. And so in this case, there is evidence, compelling evidence to show his legitimate intent to return and also the reasons that were compelling for him to originally go to the property. Should we take into account the allegation by the defendant that the claims here are moot because they've all been repaired, fixed? Does that matter? If the claims have, if all of the violations have in fact been fixed, that does matter. However, appellee is, appears to be basing that off of a misquoted portion of appellant's brief in which appellant did say that in past lawsuits that Mr. Jones has filed, some or all of the barriers have been fixed as a result of Mr. Jones filing said lawsuits. Do you want to save any of your time? I know we don't have a lot, but it's entirely up to you. I would like to reserve two minutes if possible. You don't have two minutes. Okay, then I would like to reserve the balance of my time. Okay, very well. Thank you very much. So we'll hear from the Mr. Abraham, right? We can't hear you. I think you're muted, Mr. Abraham. There you go. Okay, we can hear you now. Thank you. Thank you, Your Honor. Nobody's ever accused me of not being able to be heard. So thank you very much, Your Honors, and may it please the court. Every case filed in the United States District Court invokes one thing foremostly, and that is the United States Constitution. As the court observed and as others have before, it is not enough that one desire to get through the courthouse doors, but rather there must be a federal question, a basis for entering the courthouse. There must be standing a case in controversy and something at the end. I have a question about the procedural posture. This was originally presented to the District Court as a summary judgment motion. Was discovery closed at the time that this ruling was made? I believe that discovery was closed. There may have been some time left for experts. Did the District Court give any indication prior to its ruling that it was going to examine, go back and examine the original complaints, allegations for standing under Iqbal and Twombly? It didn't give any indication that it was going to look at other complaints. I suspect the context for that inquiry had been this court's decision regarding what it's remarked as being the significant number of ADA lawsuits filed. But it certainly could have decided without regard to any of those other complaints. So this kind of came out of the blue, that, you know, the parties teed up briefing on plaintiff's summary judgment motion, and the District Court, without getting any input from the parties, just issues an Iqbal-Twombly ruling on standing of the complaint, ignoring the factual record. It doesn't come out of the blue, Your Honor, if I may. The court had briefing before it in opposition to the motion for summary judgment regarding what was the dissonance, the disconnection between the alleged non-conforming conditions and plaintiff's claim that somehow they gave rise to the basis for his claim. As an example... But the court didn't examine standing in light of the summary judgment record. It went back to the pleadings. That's correct, Your Honor, and I think constitutionally it had an obligation to do that. Because had the court done otherwise, had it simply said, we're going to take an end result look, let's look at the mootness of each of the claims, I mean, I don't think that it would be much... But suppose the complaint's allegations of standings are technically deficient under Iqbal-Twombly, but the record of summary judgment and all the evidence and depositions and transcripts brought together overwhelmingly establish that the standing is now there. It's all been fleshed out. Can a District Court, without any warning, go back and say, well, you know, that complaint you filed back then, and even though nobody challenged it, I actually don't like the way you wrote it. Is that a proper way to conduct proceedings? Well, I think there are two separate issues. The first is whether or not there was evidence in the record upon which the court could have based such a conclusion. In this case, if you look at the record before the court, which was not simply the pleadings, but the declaration and the papers in support of and opposition to the motion for summary judgment, there the plaintiff had engaged in the same conclusory statements regarding the nature of how he was allegedly affected by the conditions of the property. In that regard, it's interesting to note that in the presentation of Appellant's case, the word violation is used many times. Violation is a rather conclusory statement which assumes a number of things, the first of which is that there is a non-conforming condition of property, secondly encountered, or of which he's aware, affecting him personally. That's the point. The evidence was sufficient before the district court to address that, and it was that which gave rise, I believe, to the court's inquiry and conclusion. Let's take one example, and the court had noted one, and that was the tow-way sign, but I think there's one that's rather more dramatic to the point. At the excerpts of record, page 41, which is the amended complaint at page 11, there's a discussion of the absence of a blue border at the top of an access aisle. This isn't even a federal claim. It's a state standard. It's more a matter of aesthetics than anything else because, as the court would observe, there are so many indicators of an accessible parking space. There's the ISA symbol on the ground. There's the sign on the front. There's other warnings. There's a blue-striped access aisle with diagonal lines, and yet the plaintiff complains that the blue border at the top is missing. But what's more fascinating is in the very next page, at 42 of the excerpts of record, it states that he needs sufficient space to exit his vehicle. A blue border has nothing to do, at the top, has nothing to do with sufficient space. He says he needs sufficient space to safely disembark with his mobility device away from the vehicle. Let's think about that because the district court did. He's got a car. He's got a cane. He needs eight feet on the passenger side to remove that cane from the car? That's not plausible. You may have great points on the merits of a lot of this, but procedurally what happened is the district court was presented with a summary judgment motion from the plaintiff, and then without any warning, any briefing, it then issued an order saying, I find the complaint to be deficient in its allegations of standing under Iqbal Chwambli. It then sui sponte, raised the idea of amendment, and shot it down without any briefing or any showing that you could meet the standing for amendment. How is this conceivably a proper way to conduct civil procedure? It's probably the way to do it because constitutionally I believe it's compelled. If the court does not have to make decisions without input from the parties, without notice and an opportunity to be heard. The court already had input from the parties. Which it ignored because it went back and looked at the pleadings rather than the factual record on summary judgment. What it looked at was everything that it had before it. It wasn't simply the pleadings themselves. It had context for them. The context for them were the declarations and the summary judgment motion was fully briefed. So if there was anything that required elucidation with respect to the nature of the claims, the court could have then looked in its statement of decision. It could have said, I have looked at these other things because there was unclarity. Much like one does in a contract claim, first the question is, are the terms clear? If the terms are clear, we don't look anywhere else. He looked at the allegations in the complaint and there was not one of them, not one condition of the property as to which the plaintiff had said, as a result of this, I was not able to, and then fill in the blank. I wasn't able to remove my cane from the car. I wasn't able to take a step. I wasn't able to walk through the threshold. Did you move to dismiss that complaint because of those deficiencies? We did not move to dismiss the complaint for a number of reasons, not least of which is that, as the court is well aware, motions to dismiss are not always viewed in the same strictest sense as once the merits are, so to speak, presented to the court once discovery is continued. There are so many motions to dismiss that have been denied with the court saying, we'll let you fill that in with discovery. Here, the discovery, the fact discovery was done. The plaintiff had proceeded with their motion, so presumably there was no need for additional expert discovery, and yet the evidence that was presented in support of the motion for summary judgment was little more than a repetition of what was in the pleading. The court then was presented with two possibilities. One is to say, I'll ignore the threshold issues, the jurisdictional issues, and the justiciability issues, and decide whether or not everything is moot. In fact, to make clear the record, everything that would have affected or theoretically could have affected the plaintiff in light of his disability was moot at the time of the briefing, the time that the summary judgment was fully briefed. The court looked at that record. There's no question that he did given the lapse of time between when the briefing was done and the order was issued. He then looks back at the plaintiff and asks, properly asks the question, is this even before me in a proper context constitutionally so that I can render a decision? The court couldn't ignore that, and that's why the courts are compelled, even sua sponte. Let me ask you this, counsel. Yes, sir. Let's just say arguendo, that at least one of the allegations made was sound as far as the pleading was concerned, and there was standing. What's your best argument that what the court did thereafter, as my colleague has aptly described it, meets the standard to avoid any abuse of discretion? Let's take that assumption. We have 15 conditions of the property that are alleged to be nonconforming, one of which may in fact relate to his disability. The concern that the court would then have is the fact that with respect to that one, if you look at the complaint, every one of the consequences is described in a theoretical fashion. The plaintiff never says, and it actually happened to me. It was always, it might happen. It could happen. I would prefer that I not be in a context where there is the possibility of it happening. So that gets back then to the Iqbal-Ghamli requirement, right? Exactly, Your Honor. Okay. You're over your time. Let me ask my colleague whether either has additional questions. All right. I'm sure we could talk a lot more, but your time is up, so thank you very much for your argument. Let's hear from Ms. Davis again on rebuttal. Ms. Davis. In his complaint and first amended complaint, Mr. Jones described with particularity the difficulty he experienced, particularly in light of trip and fall hazards on Apele's property. Importantly, the district court noted that, quote, It was, therefore, improper for the district court to dismiss Mr. Jones's case without leave to amend. Okay. Thank you. Other questions, anybody? Okay. Thank you both for your argument. We appreciate it. The case just argued is submitted.
judges: SMITH, COLLINS, LEE